1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10                **EASTERN DIVISION**

11

12   DANA ACEVEDO o/b/o A.A.,              )      No. ED CV 09-637-PLA
                                          )
13                     Plaintiff,         )
                                          )
14             v.                         )      **MEMORANDUM OPINION AND ORDER**
                                          )
15   MICHAEL J. ASTRUE,                   )
     COMMISSIONER OF SOCIAL               )
16   SECURITY ADMINISTRATION,             )
                                          )
17                     Defendant.         )
                                          )
18   _____)

19                       **I.**

20                  **PROCEEDINGS**

21          Dana Acevedo ("plaintiff"), on behalf of her minor son A.A.,[1] filed this action on April 6,

22   2009, seeking review of the Commissioner's denial of A.A.'s application for Supplemental Security

23   Income payments.  The parties filed Consents to proceed before the undersigned Magistrate

24   Judge on May 4, 2009, and May 15, 2009.  Pursuant to the Court's Order, the parties filed a Joint

25   Stipulation on October 13, 2009, that addresses their positions concerning the disputed issues in

26   the case.  The Court has taken the Joint Stipulation under submission without oral argument.

27   _____

28        [1]   At the time this action was filed, Dana Acevedo was appointed Guardian Ad Litem for her
          minor son, who will be referred to herein as "A.A."

## II.

## BACKGROUND

On November 2, 2006, Dana Acevedo filed an application seeking Supplemental Security Income payments for her minor son, A.A., alleging that he had been disabled since November 1, 2001, due to behavioral, social and educational problems, including attention-deficit/hyperactivity disorder ("ADHD") and Asperger's syndrome.  [Administrative Record ("AR") at 92-98, 105-24, 128-35, 139-48.]  After the application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 44-49, 52-57.]  A hearing was held on July 28, 2008, at which plaintiff and A.A. appeared with counsel and testified.  [AR at 21-41.]  A medical expert also testified.  [AR at 24-27.]  On December 17, 2008, the ALJ determined that A.A. was not disabled.  [AR at 6-20.]  When the Appeals Council denied plaintiff's request for review of the hearing decision on February 19, 2009, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-3.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

1   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

2   53 F.3d 1035, 1040-1041 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

3

4                                              **IV.**

5                        **EVALUATING DISABILITY IN A CHILD**

6          The evaluation of disability for children differs from that for adults.  For an individual under

7   eighteen years of age to be disabled for the purpose of receiving benefits, he must suffer from a

8   "medically determinable physical or mental impairment, which results in marked and severe

9   functional limitations, and which can be expected to result in death or which has lasted or can be

10  expected to last for a continuous period of not less than [twelve] months."   42 U.S.C. §

11  1382c(a)(3)(C)(i).  An impairment meets this requirement if it meets or equals in severity any

12  impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  20 C.F.R.

13  § 416.924(d).

14

15  **A.    THE THREE-STEP SEQUENTIAL EVALUATION PROCESS**

16         The regulations promulgated by the Social Security Administration establish a three-step

17  sequential evaluation process for child disability cases.  See 20 C.F.R. § 416.924.  At step one,

18  the relevant inquiry is whether the child is engaged in substantial gainful activity.  If so, there is no

19  disability, and the claim is denied.  20 C.F.R. § 416.924(b).  If the child is not engaged in

20  substantial gainful activity, the fact finder then determines whether the child has a medically

21  determinable impairment or combination of impairments that is severe.  If the impairment is a

22  "slight abnormality or a combination of slight abnormalities that cause no more than a minimal

23  functional limitation," the Commissioner will find that the impairment is not severe and will deny

24  the child's claim. 20 C.F.R. § 416.924(c).  If the claimant has a severe impairment, the third and

25  final step assesses whether the impairment meets or medically or functionally equals in severity

26  an impairment in the Listings.  If the impairment meets or equals a listed impairment, the child will

27  be found disabled, assuming that the twelve-month duration requirement is also met.  20 C.F.R.

28  § 416.924(d).

1   A child's impairment "is medically equivalent to a listed impairment . . . if it is at least equal

2   in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  To

3   establish medical equivalence, "a claimant must establish symptoms, signs and laboratory findings

4   'at least equal in severity and duration' to the characteristics of a relevant listed impairment."

5   Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526).

6   To determine whether a child's severe impairment functionally equals a listed impairment,

7   the Commissioner assesses all of the functional limitations caused by the child's impairment in six

8   "domains":  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

9   and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6)

10  health and physical well-being.  20 C.F.R. § 416.926a(a), (b).  To functionally equal a listed

11  impairment, a child's impairment must result in "marked" limitations in two domains or an "extreme"

12  limitation in one domain.  20 C.F.R. § 416.926a(a).  A "marked" limitation is one that "interferes

13  seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20

14  C.F.R. § 416.926a(e)(2).  It is "'more than moderate'" but "'less than extreme.'"  Id.  An "extreme"

15  limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or

16  complete activities."  20 C.F.R. § 416.926a(e)(3).  It is the rating given to "the worst limitations."

17  Id.

19  **B.    THE ALJ'S APPLICATION OF THE THREE-STEP PROCESS**

20  In this case, at step one, the ALJ found that A.A. had not engaged in substantial gainful

21  activity at any relevant time. [AR at 12.] At step two, the ALJ concluded that A.A. has the severe

22  impairments of "attention deficit hyperactive disorder, conduct disorder, and learning disorder."

23  [Id.]  At step three, the ALJ determined that A.A.'s impairments do not meet or equal any

24  impairment in the Listings, and therefore concluded that A.A. is not disabled.  [AR at 13-20.]

25  /

26  /

27  /

28  **V.**

4

1

## THE ALJ'S DECISION

2      Plaintiff contends that the ALJ erred by (1) failing to properly consider a report by a teacher

3 discussing A.A.'s classroom behavior; (2) failing to properly consider the opinion of one of A.A.'s

4 therapists; and (3) improperly discounting plaintiff's credibility.  [Joint Stipulation ("JS") at 2-14.]

5 As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further

6 proceedings.

7

8 **A.**    **THE ALJ'S CONSIDERATION OF THE THERAPIST'S OPINION**

9      Plaintiff argues that the ALJ erred by failing to consider the findings of one of A.A.'s

10 therapists, Natividad Vasquez-Silva.  [JS at 6-9.]  On July 25, 2006, Ms. Vasquez-Silva reported,

11 among other things, that A.A. exhibited poor attention, overactivity, poor impulse control, and poor

12 relations with his peers.  She diagnosed A.A. with ADHD and possibly Asperger's syndrome, and

13 assigned a Global Assessment of Functioning score of 47.[2]  [AR at 489.]  The ALJ made no

14 mention of Ms. Vasquez-Silva's findings.  [JS at 6-7; see AR at 9-20.]  Instead, the ALJ "assigned

15 significant weight to the state agency medical consultants' opinions."  [AR at 14.]  There is no

16 evidence, however, that the consulting physicians considered Ms. Vasquez-Silva's report.[3]  [See

17 AR at 300-06, 324-37.]  Similarly, the ALJ "concur[red] with the [testifying] Medical Expert's

18

19

_____

20    [2]   A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the

21 individual's overall level of functioning.  It is rated with respect only to psychological, social, and

occupational functioning, without regard to impairments in functioning due to physical or

22 environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical

Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).  A GAF rating in the 41-50 range

23 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no

24 friends, unable to keep a job)."  Id. at 34.

25    [3]   Although Ms. Vasquez-Silva's name appears in one consulting physician's report [AR at

26 300], there is no indication that the state physician considered her July 25, 2006, report.  The

consulting physician lists three dates under Ms. Vasquez-Silva's name, but it appears that another

27 clinician, not Ms. Vasquez-Silva, assessed A.A. on those three dates.  [AR at 295-99.]  In any

event, the ALJ's failure to consider Ms. Vasquez-Silva's July 25, 2006, report was error regardless

28 of whether or not one of the consulting physicians reviewed the report.

1  opinion," but the expert did not discuss Ms. Vasquez-Silva's observations.  [AR at 15; see AR at

2  24-27.]

3          As a therapist, Ms. Vasquez-Silva qualifies as an "other source" under the Social Security

4  Administration's regulations.  See 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  Although an ALJ

5  may give more weight to an opinion of an "acceptable medical source" over an "other source" [see

6  20 CFR § 416.927; Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)], the ALJ may not

7  completely disregard an opinion from an "other source" merely because it is not an "acceptable

8  medical source."   See Social Security Ruling ("SSR") 06-03p[4] ("[T]here is a requirement to

9  consider all relevant evidence in an individual's case record . . . ."); see also Sprague v. Bowen,

10  812 F.2d 1226, 1232 (9th Cir. 1987) (noting that regulations require an ALJ to "consider

11  observations" even "by non-medical sources").   As the Social Security Administration has

12  recognized, "the case record should reflect the consideration of opinions from medical sources

13  who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the

14  claimant in their professional capacity. . . .  [T]he adjudicator generally should explain the weight

15  given to opinions from these 'other sources[.]'"  SSR 06-03p.  "Although [the regulations] do not

16  address explicitly how to evaluate evidence (including opinions) from 'other sources,' they do

17  require consideration of such evidence when evaluating an 'acceptable medical source's' opinion."

18  Id.  Ms. Vasquez-Silva's report is relevant to the issue of whether A.A. is disabled, and may

19  suggest, for example, that A.A. has greater limitations in the domains of attending and completing

20  tasks and interacting and relating with others than the ALJ determined.  The ALJ's failure to

21  consider the report was error.

22          Moreover, further inquiry may reveal that Ms. Vasquez-Silva's report should be considered

23  to be the opinion of an "acceptable medical source."  The report contains a line, now empty, for

24  a physician's signature, beneath the notation "[p]sychiatrist has reviewed and reevaluated case

25

26  _____

27      [4]   Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social
   Security Administration interpretations of the statute it administers and of its own regulations," and
   are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."
28  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  and agrees that medications being prescribed are consistent with above diagnoses.  (Annual

2  Signature by doctor)."  [AR at 489.]  This suggests that a psychiatrist -- an "acceptable medical

3  source" whose opinion must be considered pursuant to 20 C.F.R. § 416.913(a) -- may have

4  assessed Ms. Vasquez-Silva's report and adopted her findings.  Under such a scenario, the ALJ

5  may be required to consider Ms. Vasquez-Silva's opinion as that of a "treating source."  See

6  Gomez, 74 F.3d at 970-71 (holding that ALJ properly considered opinion of a nurse practitioner

7  to be part of the opinion of the physician, an "acceptable medical source," with whom she worked).

8  The ALJ would then be required to determine whether Ms. Vasquez-Silva's opinion contradicted

9  another medical source's opinion, and, if the ALJ chooses to reject the opinion, she must provide

10  "specific, legitimate reasons" if the opinion is contradicted, or "clear and convincing reasons" if it

11  is not.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Remand is warranted on this issue.

12

13  **B.     THE ALJ'S CREDIBILITY DETERMINATION**

14          Plaintiff (A.A.'s mother) contends that the ALJ failed to properly assess her credibility.  [JS

15  at 9-11, 14.]  The testimony of lay witnesses, including family members, about their own

16  observations regarding the claimant's impairments constitutes competent evidence that must be

17  considered by the Commissioner in the disability evaluation.  Robbins v. Soc. Sec. Admin., 466

18  F.3d 880, 885 (9th Cir.2006).  Such testimony cannot be discounted unless the ALJ provides

19  specific reasons that are germane to that witness.  Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir.

20  2009); see Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085-86 (9th Cir. 2000) (applying same

21  standard to mother of child applicant for Supplemental Security Income payments).  "'In disability

22  cases where the child is unable to adequately describe her symptoms, the Commissioner accepts

23  the testimony of a person most familiar with the child's condition, such as a parent.'"  Smith ex rel.

24  Enge v. Massanari, 139 F. Supp. 2d 1128, 1134 (C.D. Cal. 2001) (quoting Brown v. Callahan, 120

25  F.3d 1133, 1135 (10th Cir. 1997)) (citing 20 C.F.R. § 416.928(a)).  In such circumstances, the

26  testimony of a parent is a particularly valuable source of information because a parent usually

27  sees the child every day.  20 C.F.R. § 416.924a(a)(2)(i).

28

1    Here, A.A.'s mother testified that A.A. fights with his siblings, throws tantrums, has trouble

2    following directions, misbehaves at school, does not do his homework, refuses to change his own

3    clothes, does not attend to his personal hygiene, and is generally uncooperative and belligerent.

4    [AR at 32-39.]  Despite finding that A.A.'s medical impairments "could reasonably be expected to

5    produce the alleged symptoms," the ALJ found A.A.'s mother's "statements concerning the

6    intensity, persistence and limiting effects" of A.A.'s symptoms to be incredible "to the extent they

7    [were] inconsistent with finding that [A.A.] does not have an impairment or combination of

8    impairments that functionally equals the listings."  [AR at 13-14.]  The ALJ explained her credibility

9    determination by stating that "the record fails to document any objective clinical findings

10   establishing that claimant was disabled in light of the reports of the treating and examining

11   practitioners and the findings made on examination."  [AR at 14.]

12          The ALJ did not provide a legitimate reason germane to A.A.'s mother for discounting her

13   credibility.  An ALJ cannot rely solely on an absence of supporting medical evidence to reject lay

14   witness testimony.  Bruce, 557 F.3d at 1116 ("Nor under our law could the ALJ discredit her lay

15   testimony as not supported by medical evidence in the record.") (citing Smolen v. Chater, 80 F.3d

16   1273, 1289 (9th Cir. 1996)).  The ALJ gave no other valid reason for discounting A.A.'s mother's

17   credibility.  She merely summarized certain medical evidence and drew a conclusion as to plaintiff's

18   credibility without providing any analysis.  [See AR at 13-15.]  "While an ALJ may certainly find

19   testimony not credible and disregard it . . . , [courts] cannot affirm such a determination unless it

20   is supported by specific findings and reasoning."  Robbins, 466 F.3d at 884-85.  The ALJ erred by

21   failing to provide specific reasons germane to A.A.'s mother for discounting her credibility.  Remand

22   is warranted on this issue.[5]

23   /

24   /

25   /

26   _____

27          [5]   In light of the Court's remand order, the Court does not address plaintiff's remaining
     contention of error, but notes that "the ALJ is not required to discuss evidence that is neither

28   significant nor probative."  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to reconsider the opinion of A.A.'s therapist and to reassess plaintiff's credibility.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  May 17, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE